IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DEBORAH D. STACEY | ) | |
| | ) | |
| v. | ) | No. 3:09-1120 |
| | ) | Judge Nixon/Bryant |
| SOCIAL SECURITY ADMINISTRATION | ) | |

To: The Honorable John T. Nixon, Senior Judge

### REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, denying plaintiff's application for disability insurance benefits ("DIB"), as provided under the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 18), to which defendant has responded (Docket Entry No. 20). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 11),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED, and that the decision of the SSA be AFFIRMED.

### I. Procedural History

Plaintiff protectively filed her DIB application on August 30, 2004 (Tr. 55-59, 68). She alleges the onset of disability as of January 13, 2003, following her involvement in

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

an automobile accident the previous day. (Tr. 72-73) The alleged causes of her disability are a lower back injury suffered in that automobile accident, fibromyalgia, and associated symptoms, as well as depression. (Tr. 72) Plaintiff's claim to benefits was denied at the initial and reconsideration stages of agency review (Tr. 40-42, 44-46), and she thereafter filed a request for de novo hearing before an Administrative Law Judge ("ALJ"). (Tr. 47)

On July 22, 2008, plaintiff appeared with counsel before the ALJ, who heard testimony from plaintiff and from an impartial vocational expert ("VE"). (Tr. 661-90) At the conclusion of the hearing, the ALJ gave notice of his intent to order a consultative physical examination of plaintiff at government expense, but otherwise closed the record and took the matter under advisement. (Tr. 689-90) Plaintiff attended the consultative examination on December 4, 2008. (Tr. 653) On January 9, 2009, the ALJ issued a written decision in which he found that plaintiff was not disabled under the Social Security Act. (Tr. 14-26) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since January 13, 2003, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: fibromyalgia, cervical and lumbar degenerative disc disease, bilateral carpal tunnel syndrome, and obstructive sleep apnea (20 CFR 404.1521 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. She requires an option to

sit/stand/walk at will throughout an 8-hour workday. She can occasionally climb, balance, stoop, crouch, kneel and crawl. She can occasionally reach, push/pull, handle, finger and feel with her upper extremities; however, she should not perform any overhead work.

6. The claimant is capable of performing past relevant work as a purchasing assistant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 13, 2003 through the date of this decision (20 CFR 404.1520(f)).

(Tr. 16, 18, 26)

On September 25, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 5-7), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following record review is taken in large measure from defendant's brief, Docket Entry No. 20 at 2-7, with some supplementation by the undersigned.

The record shows that plaintiff was admitted into the University Medical Center on January 12, 2003, after suffering a motor vehicle accident. (Tr. 126) She reported low back pain. (Tr. 127) She was neurovascularly intact and did not suffer loss of consciousness. Id. An x-ray examination of her lumbar spine did not show any evidnece of fracture or dislocation. (Tr. 128)

Plaintiff sought treatment from Dr. James Bachstein, M.D., as early as January 21, 2003. (Tr. 470) She presented with complaints of neck and shoulder pain and stiffness. Id. Dr. Bachstein noted tenderness over plaintiff's cervical muscles and over the lumbosacral paraspinous processes. (Tr. 471) Plaintiff had normal range of motion of her cervical spine. Id. Dr. Bachstein's impression was back pain. Id. At Dr. Bachstein's behest, plaintiff underwent an MRI of her lumbar spine on January 23, 2003. (Tr. 495) The results showed very minimal degenerative change at her lower lumbar spine and no fracture, herniation, or stenosis at any level. Id. An MRI of her cervical spine, also performed on January 23, 2003, revealed minimal annular bulge at C6-7, with no focal disc herniation or stenosis, and a mild contusion or fracture at the left posterior rib. (Tr. 493) A whole body bone scan was negative. (Tr. 492)

At the followup visit with Dr. Bachstein, on January 27, 2003, plaintiff maintained her complaints of neck and shoulder pain. (Tr. 467) Dr. Bachstein noted tenderness at plaintiff's cervical muscles and paraspinous processes, but also observed that she had full range of motion. (Tr. 468) His assessment was back pain. Id. Dr. Bachstein advised plaintiff to avoid heavy lifting and use proper body mechanics. Id. When plaintiff returned to Dr. Bachstein, on April 3, 2003, she reported injuring her left ankle after falling. (Tr. 463) Dr. Bachstein found some swelling at her left ankle. (Tr. 464) He recommended rest, ice, compression, and elevation for her ankle. Id. An x-ray of plaintiff's ankle failed to demonstrate any fracture or dislocation. (Tr. 491) Soon thereafter, plaintiff presented with complaints of dizziness and loss of balance. (Tr. 456) She also reported anxiety and depression. Id. Dr. Bachstein indicated that plaintiff had tenderness over her cervical and lumbar spines and her left ankle. (Tr. 457) Dr. Bachstein referred plaintiff for a CT scan of

her head.  Id.  The scan, performed on May 5, 2003, was normal.  (Tr. 490)  The visits for the remainder of 2003 are unremarkable as plaintiff did not present any new complaints, and Dr. Bachstein did not make any new findings.  (Tr. 438-54)  He consistently diagnosed plaintiff with back pain and advised her to avoid heavy lifting and use proper body mechanics.  Id.

On February 23, 2004, plaintiff indicated to Dr. Bachstein that she had decreased sleep, depression, and back pain radiating into her legs.  (Tr. 434)  Dr. Bachstein repeated his observations of tenderness at the cervical and lumbar levels of plaintiff's spine.  (Tr. 435)  He recommended that plaintiff "watch heavy lifting" and that she exercise.  Id.  He also prescribed Paxil for depression and Ambien for a sleep aid.  Id.

On May 8, 2004, blood tests ordered by Dr. Bachstein's office revealed an elevated sedimentation rate, indicating that an "inflammatory process [was] going on."  (Tr. 478)  It was noted that this result should be followed up with fibromyalgia testing.  Id.  On June 8, 2004, plaintiff was examined by Dr. T. Scott Baker, M.D., in consultation with Dr. Bachstein's office regarding her generalized pain.  (Tr. 170-71)  Dr. Baker's musculoskeletal and neurologic examination revealed no abnormalities, except that plaintiff was "diffusely tender with trigger points in the cervical, thoracic, and lumbar paraspinals, occiput, upper trapezius, supraspinatus, costosternal margin, lateral epicondyles, trochanteric bursas, and gluteals."  Id.   Dr. Baker gave the following diagnostic impression:

> Fibromyalgia/generalized myofascial pain.  She meets the criteria set forth by the American College of Rheumatology in 1990.  This certainly explains the majority of her pain and the negative testing she has had to date....

(Tr. 171)

By October 11, 2004, Dr. Bachstein began to include fibromyalgia in  his

5

description of plaintiff's medical history. (Tr. 388) When he examined plaintiff, she had tenderness in her lumbar and cervical spine. (Tr. 389) He assessed plaintiff with chronic pain, gastroesophageal reflux disease ("GERD"), memory loss, and depression. Id.

Dr. George Bounds, Jr., M.D., a state agency consultant, reviewed plaintiff's medical file without examining her, and provided an assessment of her physical functional capacity on January 12, 2005. (Tr. 281-85) He estimated that she would be able to lift/carry up to 20 pounds occasionally and 10 pounds frequently, and that she would be able to sit and to stand/walk for about six hours each in an eight-hour workday. (Tr. 281) Similar limitations were assessed by another nonexamining consultant, Dr. Anzures, in August 2006. (Tr. 310-17)

On February 3, 2005, upon referral from Dr. Bachstein, plaintiff was examined by Dr. Christopher Kaufman, M.D., an orthopedic surgeon specializing in spinal surgery. (Tr. 286-87) Dr. Kaufman noted that her prior MRI revealed a protruded cervical disc, but that her physical examination and other films were largely normal. He diagnosed cervicalgia and low back pain, and stated that he was not aware of a surgical option that would benefit plaintiff. (Tr. 287)

On July 28, 2005, plaintiff reported to Dr. Bachstein that her medications seemed to help her symptoms of leg and feet swelling. (Tr. 368) Dr. Bachstein found that plaintiff had good muscle strength in all of her extremities. (Tr. 369) His assessment included fibromyalgia, restless leg syndrome, and GERD. Id. On February 3, 2006, plaintiff indicated that her fibromyalgia pain seemed better. (Tr. 359) Dr. Bachstein noted that plaintiff's muscle strength was good in all extremities and maintained his diagnoses of fibromyalgia and GERD. (Tr. 360)

On November 28, 2006, plaintiff's counsel submitted a medical assessment of plaintiff's ability to perform work-related activities, completed by Dr. Bachstein. (Tr. 498-502) Dr. Bachstein limited plaintiff to lifting 10 pounds occasionally, but had "no explanation" for this limitation. (Tr. 499) He also indicated that she could occasionally lift less than 10 pounds, stand for less than two hours in an eight-hour workday, and sit for less than six hours in an eight-hour workday. (Tr. 500) Dr. Bachstein did not provide any medical findings to explain these limitations. Id. He felt that plaintiff could never climb or balance, but could occasionally stoop, crouch, kneel, and crawl. (Tr. 501) He also opined that plaintiff was precluded from reaching, handling, feeling, pushing, or pulling. Id.

When plaintiff saw Dr. Bachstein on April 9, 2007, she reported that her medication helped with the restless leg syndrome. (Tr. 559) Dr. Bachstein noted that she had good muscle strength in all extremities. (Tr. 560) His assessment remained fibromyalgia, restless leg syndrome, and GERD. Id. Dr. Bachstein suggested that plaintiff exercise daily, alternating between aerobic and resistance for 30 minutes per day. Id. As of August 31, 2007, Dr. Bachstein made the same findings and repeated his recommendation for exercise. (Tr. 554-56) The treatment notes from March 14, 2008 and April 23, 2008, show that plaintiff was diagnosed with fibromyalgia. (Tr. 547-52) On April 15, 2008, the ALJ sent a letter to Dr. Bachstein requesting that he submit a completed medical assessment of plaintiff within ten days. (Tr. 634) Dr. Bachstein declined to perform a physical for these purposes. Id. However, on July 13, 2008, Dr. Bachstein responded to a request from plaintiff's attorney regarding his initial functional assessment (Tr. 498-502), indicating that the limitations assessed therein were still current. (Tr. 639)

On June 24, 2008, plaintiff was referred for evaluation by a rheumatologist,

7

Dr. Robert P. LaGrone, M.D. (Tr. 505-19) After his examination, Dr. LaGrone offered the following impression:

> Debby has a 4 year history of Fibromyalgia. She had some partial relief for 1 week using prednisone, so has been thought to have possible Polymyalgia Rheumatica, but in recent months sees no benefit to the prednisone and had tapered down to 5 mg every 3 days. To my exam, this is clearly Fibromyalgia or Myofascial pain. She probably does have [osteoarthritis] in the lumbar spine, but treatment should be directed to the Fibromyalgia. She is about to start CPAP for apnea which will help. I'll add Lyrica, but she may [be able] to see the Sleep Center again for a trial of Xyrem. I will get serology, but if all is negative, there really is nothing more I know to do.

(Tr. 516) Dr. LaGrone recommended that plaintiff discontinue prednisone, begin a course of treatment with Lyrica at progressively higher doses, and use a Lidoderm patch as needed for treatment of localized pain. (Tr. 517)

Dr. Horace Watson, M.D., performed a consultative examination at the ALJ's request on December 4, 2008. (Tr. 653-59) Dr. Watson noted that plaintiff walked with a slow, cautious gait. (Tr. 653) Plaintiff demonstrated limited range of motion of her cervical and lumbar spine. Id. She had full motor function in all muscle groups of her upper and lower extremities. Id. Dr. Watson estimated that plaintiff could lift and carry up to 20 pounds on a frequent basis. (Tr. 654) He opined that, during an eight-hour workday, plaintiff could sit, stand, or walk for two hours without limitation and for six hours total. (Tr. 655) She could handle, finger, and feel occasionally (up to one-third of the workday) and reach in all directions frequently (between one-third and two-thirds of the workday). (Tr. 656)

At the ALJ hearing in July 2008, plaintiff testified that she was forty-six years old and a high school graduate. (Tr. 666) She testified that she experienced lower back pain

8

that radiated down her legs and caused her to fall. (Tr. 668) She further testified that she is not able to make good use of her hands because she has muscle spasms and lacks strength in her arms. Id. She stated her carpal tunnel was mild on the right and moderate on the left, but that she had not had release surgery. (Tr. 668-69) She testified that her prescription medications caused side effects of loss of concentration and memory, fatigue, and emotional disturbance. (Tr. 670-71) She testified that she has fibromyalgia pain, but also had recently had problems with nerve pain from her lower back into her legs. (Tr. 673) Her fibromyalgia pain is constant, at an average level of between 5 and 7 on a 10-point severity scale; the pain reaches a 10 only on really bad days. Id. She stated that to combat the pain, she usually stayed home in a reclined position or in bed. Id. Her pain began at the time of her motor vehicle accident in January 2003, and gradually worsened since then. Id. She is able to write, and to use a keyboard some. (Tr. 674) She cannot lift and carry a gallon of milk, cannot sit for more than 20 minutes without pain, and cannot always walk the 60 feet she has to travel to check her mail and return to the house. (Tr. 676) Her husband does all the grocery shopping, but she helps with the household chores, during which she takes rest breaks. (Tr. 677) She cannot stand any length of time because of her lower back pain, and occasional numbness in her left leg that will cause her leg to give way. (Tr. 677-78) She used to attend church services, but because of her increased inability to tolerate sitting, she now stayed home and listened to the services via a telephone connection. (Tr. 678) Her symptoms have worsened in the last couple of years, during which time she was also diagnosed with restless leg syndrome secondary to fibromyalgia. (Tr. 679) She testified that she must spend six or seven hours out of eight either in a reclined position or lying prone. Id. She testified that her pain and medication side effects prevented her from working, and

that her current pain medications were the narcotic Percocet and the muscle relaxant Flexeril for muscle spasms. (Tr. 681)

The VE testified at the hearing that plaintiff's past relevant job as a purchasing assistant would accommodate the restrictions identified by the ALJ in his finding of plaintiff's residual functional capacity. (Tr. 682-83) However, the restrictions imposed by Dr. Bachstein in his November 2006 assessment would not permit full-time work. (Tr. 687-88)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

#### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the

claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff argues for reversal of the SSA's decision on grounds that the ALJ erred by not giving controlling weight to the opinion of her treating physician, Dr. Bachstein, who assessed plaintiff with limitations which would preclude gainful employment. As recounted by the ALJ, the following assessment of plaintiff's work-related abilities was rendered by Dr. Bachstein:

> In October 2006, treating physician Dr. Bachstein completed a medical source statement indicating that the claimant could lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk less than 2

hours during an 8-hour workday; and sit for less than about 6 hours during an 8-hour workday. She could occasionally stoop, crouch, kneel, and crawl and never climb or balance. Dr. Bachstein indicated that the claimant's ability to reach, handle, feel, and push/pull were affected by her impairment(s), but he gave no explanation why the physical functions were affected and what medical finding supported his assessment. He indicated that the claimant had environmental restrictions due to her impairment(s), which included heights, moving machinery, chemicals, dust, fumes, and vibration, but he gave no explanation how the restrictions affected the claimant's activities or what medical findings supported the assessed environmental restrictions. In addition, it was "printed" on the form that the claimant's limitations began January 12, 2003 (the day prior to the claimant's motor vehicle accident, which she testified and repeatedly reported caused her disability).

(Tr. 25) On July 13, 2008, Dr. Bachstein submitted a statement indicating that these limitations from October 2006 were still current. (Tr. 639)

The medical opinion of a treating source such as Dr. Bachstein is entitled to controlling weight pursuant to 20 C.F.R. § 404.1527(d)(2) if it is well supported by objective, clinical evidence and not substantially opposed on the record. Even where such an opinion is not entitled to controlling weight, the Sixth Circuit has stated that "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference. . . ." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007). Accordingly, ALJs must provide "good reasons" for discounting the weight of a treating source opinion. See 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2); Rogers, 486 F.3d at 242. In this case, the ALJ offered the following rationale for discounting the opinions of Dr. Bachstein:

> They are not given controlling weight, because they are not "well-supported" by medically acceptable clinical and laboratory diagnostic techniques. Specifically, cervical and lumbar spine diagnostic studies revealed no evidence

13

> of disc herniation or spinal stenosis. NCS/EMG testing in 2008 showed moderate bilateral carpal tunnel syndrome; however, prior to 2008, findings were mild left and moderate right carpal tunnel syndrome and treatment notes do not reveal repeated documented complaints due to such. The claimant's subjective complaints in regards to fibromyalgia and pain are not entirely credible, for reasons discussed above, and in regards to the claimant's obstructive sleep apnea, she testified that her symptoms were improved with the use of a CPAP machine. Further, Dr. Bachstein provided no expalanations for his assessed physical functional limitations or his assessed environmental limitations. Consequently, Dr. Bachstein's opinions are not given special significance, because [they] lack explanation or support by other medical evidence.

(Tr. 25)

While plaintiff argues that the treatment notes of Dr. Bachstein and the radiographic evidence of bulging discs and other abnormalities are sufficient to bolster his assessment of limitations incompatible with even sedentary work, the reasons given by the ALJ for the way in which he weighed the opinion evidence are clearly good and sufficient for purposes of compliance with his duty under the regulations, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). As the ALJ noted, the findings on imaging of plaintiff's spine were minimal, her carpal tunnel and sleep apnea symptoms appeared reasonably well controlled, and Dr. Bachstein expressly declined to bolster his checkbox assessment of plaintiff's limitations with any particular medical support for the conclusions he had drawn. It was therefore appropriate for the ALJ to partially discount Dr. Bachstein's opinion. Notably, the ALJ's ultimate finding of plaintiff's residual functional capacity was not much less restrictive that Dr. Bachstein's assessment, allowing for only a reduced range of sedentary work wherein plaintiff could sit, stand, or walk at will throughout her workday. This residual functional capacity finding is significantly more restrictive than the assessments rendered by Drs.

14

Watson and Bounds, the physicians who plaintiff charges the ALJ with wrongly crediting, and who assessed limitations consistent with light exertional work.

It appears that the ALJ generally credited plaintiff's complaints of pain and weakness resulting from fibromyalgia, although he found that plaintiff had a tendency to exaggerate those symptoms based on her ability to perform a range of daily chores and other independent activities, as well as some inconsistent statements she had made. (Tr. 22-24) While the ALJ and the government in its brief attach too much significance to the fact that plaintiff was encouraged by Dr. Bachstein to exercise daily, as such daily exercise appears to be essential to controlling the symptoms of fibromyalgia, Rogers, 486 F.3d at 249, plaintiff does not allege error in the ALJ's analysis of her subjective complaints. Plaintiff's fibromyalgia diagnosis is well supported in the record, but, as distinguished from the Rogers case, the severity and vocational impact of the resulting symptoms has not been vouched for by multiple physicians in the case at bar. Only Dr. Bachstein offered an assessment of work-related abilities that was more restrictive than that found by the ALJ, and the ALJ sufficiently explained that Dr. Bachstein's assessment was duly considered, but not deserving of "special significance" in the determination of plaintiff's residual functional capacity. Consequently, the fact that the hypothetical limitations posed to the VE by the ALJ at the hearing did not include the limitations assessed by Dr. Bachstein does not render the VE's testimony unreliable. Accordingly, the undersigned finds substantial evidence supporting the SSA's decision.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 29th day of August, 2011.

    s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE